## ANNA VANDYKE *v.* THE CITY OF CINCINNATI AND MATTHEW L. HARBESON.

1. An ordinance of a municipal corporation, requiring property holders to remove the snow from the side-walks, in front of their property, within four hours from the time the snow has fallen, if in daylight, and remove the ice therefrom, etc., imposing a penalty of five dollars for a violation thereof, imposes a duty to the public alone, which can be enforced only by the penalty prescribed; and the non-performance thereof does not subject the party to a civil action, at the suit of a private person.

2. The obligation imposed on the city, by law, "to keep the streets in repair, and free from nuisances," only requires the exercise of ordinary care and prudence on the part of the city authorities, such as the neglect of which, at common law, would have subjected the corporation to indictment, and does not extend to the removal of the ordinary fall of snow and ice upon the side-walks; nor to any nuisance of which it has no notice, either express or implied.

SPECIAL TERM.—On demurrer to petition.

The petition sets forth that Seventh street, between Race and Elm, in the city, is a public highway, opened and used as such, and improved for the accommodation of such as choose to pass on the same; that the city of Cincinnati, by

virtue of ownership and occupancy, is bound to keep the same free from obstruction, and in a condition to be safely used by the public; that about two o'clock of the day, December 27, 1856, the plaintiff was walking on the north side of said street, upon the side-walk, in front of the property of the defendant, Harbeson; that said walk was covered with ice and sleet, and had been since six o'clock A. M. of the same day, contrary to the ordinance of said city, thereby making it dangerous and unsafe for pedestrians; that while so walking, cautiously and carefully, and without fault or negligence, on her part, owing to the unsafe condition of said side-walk, she fell and broke her thigh-bone, and was otherwise seriously injured; that the duty of keeping said side-walk unobstructed, and in a safe condition for pedestrians, devolved jointly upon said defendants, and that they both negligently and carelessly omitted the same, whereby the injuries aforesaid were sustained in the plaintiff's damage of $5,000, for which she demands judgment. To this petition both defendants have demurred.

*T. A. Logan* and *W. C. McDowell*, for plaintiff.

*Hart & Disney*, for the City of Cincinnati.

*Lincoln, Smith & Warnock*, for defendant Harbeson.

SPENCER, J. From the petition in this case, it appears that as to the defendant, Harbeson, there is no pretense that this alleged obstruction was occasioned by him, or through his fault, or for his benefit. It is simply claimed that he was the owner of the adjacent property; that the obstruction was allowed to remain, contrary to some ordinance of the city, and that it was the joint duty of him and the city to keep the side-walk unobstructed.

As the owner of the adjacent property, there was no common law duty devolved upon Harbeson to remove this obstruction. It is not claimed that he was a public officer, charged with the performance of this particular duty, and there is no statutory liability shown. If there be any other .

facts from which this liability is to be deduced, they are not set forth in the petition; and a mere averment of duty or obligation, which is not in its nature general, but depends upon particular circumstances, is not a sufficient statement of a cause of action.

If this duty is supposed to arise from the ordinance referred to, the requirements of the ordinance are not set forth, and the ordinance itself is not even referred to by its title. There is, however, a copy of the ordinance presented with the papers, on which the claim is supposed to be founded; and as it is advisable, as far as practicable, to dispose of the case upon its merits, I shall assume the ordinance to have been incorporated in the petition.

The ordinance was passed by the city council in February, 1856. It required, in substance, the owners of property, bounding upon any paved side-walks, to cause the same to be freed from any snow which may have fallen thereon, within four hours after the same should have ceased to fall, if within daylight; and in like manner to cause any ice to be removed from such side-walk, which may have fallen thereon from any cause, or to cause the side-walk to be sprinkled with sand, or some other similar substance, so as to diminish the danger of accident; and it imposed a penalty of five dollars for a failure to perform either of said duties.

Assuming this ordinance to have been properly passed, the only consequence it proposes, as a breach of duty, is the imposition of a penalty of five dollars, to be recovered by action in the name of the city; and the only power the city council have of enforcing the performance of a duty of this description, is by the imposition of a fine. Charter, section 35, Swan, 964. So that the wrong-doer knows, in any case, the precise measure of his fault, and can not be subjected beyond.

But so far as it is claimed that the enactment of such an ordinance creates a positive duty, on the part of owners of property, to clear their side-walks of the obstructions named, the neglect of which is to render them answerable, for the consequences to such as may suffer therefrom, no matter

to what extent, we deny that the city council has the power to impose any such obligation; for, if they have the power to create, they also have equal power to limit and restrict the obligation, or prescribe the sole consequences arising therefrom; so that if the ordinance had provided that delinquents should not be answerable in damages to third persons, or should be answerable only in a limited sum, either a limited, or, as the case may be, no liability at all would have followed.

The effect of this would be to invest a municipal corporation with the highest attribute of sovereignty, that of creating, limiting, and directing the most important rights and interests of individuals in the community, and dictating their relations to each other; a power that no legislature, under our constitution, can depute to, or confer upon another.

I conclude, then, that the ordinance imposed upon Harbeson a duty to the public alone, which can only be enforced by the penalty prescribed; and the non-performance of which does not subject him to a civil action, at the suit of a private person.

The next and very important question to be decided is, as to the liability of the city, in the case stated. I premise, here also, that, at *common law*, cities and towns are under no obligation, as such, to keep the streets and highways running through them in repair, or free from obstruction; whatever their duties and liabilities, therefore, may be in this respect, are purely statutory. But whenever such duty has been imposed or incurred, and is neglected, to the detriment of a private individual, the party injured has his remedy by action against the corporation. This proposition has been much doubted by many eminent judges. But the weight of modern authority is greatly in its favor. In 1 Bing., N. C. 222; 27 E. C. L. 375, *The Mayor of Lyme Regis* v. *Henley*, which was an action brought by Henley against the corporation of Lyme Regis for not keeping in repair a certain quay, by reason whereof the sea broke over and injured the plaintiff's premises, such duty being devolved upon

the borough by its charter, it was held that the corporation was liable, although the duty was owing to the public alone; and it is laid down as " clear and undoubted law that, wherever an indictment lies for non-repair, an action on the case will lie at the suit of a party sustaining any peculiar damage." In 4 Hill, 630, *Adsit* v. *Brady*, it was held that a superintendent of the canal, whose duty it was to keep such canal in good repair and free from obstruction, was liable to an action in favor of a party injured by his neglect to remove a sunken boat from the canal. The principle of liability is thus stated : " When an individual sustains an injury by the misfeasance or non-feasance of a public officer who acts, or omits to act, contrary to his duty, the law gives redress to the injured party, adapted to the nature of his case ;" and in 5 Sanf., Sup. Ct., 302, *Hutson* v. *The City of New York*, an action was *maintained* against the city for injuries sustained by the plaintiff's wife, in consequence of one of the streets being out of repair, the court assuming it to be the general duty of that city to keep its streets in repair.

In Massachusetts, and in most of the New England States, the duty and liability are regulated by statute; and in those cases where the liability has been doubted or denied, it has been because the duty itself was not *clear* or absolute, but dependent upon the *ability* of the defendants to perform it.

So far as any obligation rests upon the city of Cincinnati in the matter complained of, it is created by section 63 of the act, commonly called the charter, wherein it is provided that " the *city council* shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares, and commons within the city, and *shall cause the same to be kept open and in repair, and free from nuisances.*" Here, there is a plain duty devolved upon the city council as the *representatives* of the city, " to keep the streets of the city in *repair* and *free from nuisances*," for which purpose such streets are placed within their special " care, supervision and *control*," and ample means have been placed at the disposal of the council by taxation, to discharge this duty.

Under the principle, then, above stated, when an injury may have been sustained by any one, in consequence of a neglect to repair, or to remove a nuisance, the city must respond in damages.

The question then remains to be considered, what is the extent of the duty "*to keep the streets free from nuisances?*" for if there has been any wrong done by the city, in the present case, it has been the omission of this particular duty. The only proper answer to the question is, that it is commensurate with the ordinary exigencies of things, and requires the exercise of ordinary prudence and care on the part of the city authorities—such care and prudence only, as the neglect of which, would have subjected the corporation to *indictment* at common law; 6 Cush. 524, *Raymond* v. *The City of Lowell.* And I hold it to be a proper test of the civil liability, that the negligence must be such as would have warranted an indictment at common law; 1 Bing. N. C. 222, *Mayor of Lyme Regis* v. *Henley*, already cited. Trifling obstructions, or want of repairs, may *occasionally* work a serious harm; yet such accidents can not ordinarily be foreseen, or guarded against, and do not lay the foundation of an action. To require the city, at all hazards, to remove or correct them, or be liable for the consequences, would be not only to make the city an insurer of the lives and safety of all its people who pass on the streets, but to ask the performance of an impossible duty.

The character of the nuisance to be removed, must be such as would ordinarily require the interference of the public authorities for its removal—not such as are merely transient in character, and will, of themselves, in the nature of things, soon disappear. The rain, or the snow, may fall upon the side-walks and congeal into ice, so as to make the walks slippery and unsafe, yet this is a nuisance (if it may properly be so called) which is transient in its very nature—calculated almost immediately to disappear—but in any event, whether of longer or shorter ⬤on, one which the public authorities have never, any⬤ been accustomed

to remove—except as required, by ordinance, in cases like the present, and the neglect to do which would not, anywhere, be the subject of an indictment.

What, then, is the case of negligence made against the city in the plaintiff's petition? It is, that the side-walk, of one of the public streets, was covered with ice and sleet, making it dangerous and unsafe for pedestrians, for the space of some eight hours, from six o'clock in the morning until two o'clock in the afternoon, without being removed. No special or peculiar accumulation of ice, at this particular place, that was not then common to the whole city, is averred—nor any circumstances stated from which an aggravated character of the evil can be inferred. It seems to be the ordinary case of ice and sleet upon the side-walk, incident to all winter weather, and in all parts of the city. But waiving this, and supposing that the nuisance was special and even aggravated, the petition contains no averment that the city had *any notice* thereof; and the circumstances of the case do not imply notice. This is essential to a recovery. For, without notice of the nuisance, the city authorities can not be required to remove it, and are not guilty of negligence, which is the gist of the action; 9 Mass. 247, *Mower* v. *The Inhabitants of Leicester*. In *Griffin* v. *The Mayor, etc. of New York,* cited in 5 Sanf. 303, it was properly held that the city was not liable to a private individual for an injury sustained by him, in consequence of rubbish being thrown into the street by a third person, it not appearing that the officers of the corporation had notice of the fact, were requested to remove it, or had reasonable time therefor. And so here, the nuisance, if any, was created by a third person, it may be, or by *act of God,* and the defendants were not bound intuitively to know its existence.

There is no case of negligence presented for which an indictment would lie at common law, or for which a civil action can be maintained against either of the defendants and the demurrer, therefore, of both will be sustained.

Demurrer sustained.

Judgment for defendants.